UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------   X

LINDSAY JUNIOR BREEDEN,

                       Plaintiff,

-against-

THE CITY OF NEW YORK; COMMISSIONER
RAYMOND W. KELLY; P.O. LOUIS DUCCESCHI,
SHIELD #3030; DETECTIVE MICHAEL
BRAITHWAITE, SHIELD #347; DETECTIVE
TIMOTHY O'BRIEN, SHIELD #2610; AND,
DETECTIVE MATTHEW WALKER, SHIELD #1701;
the individual defendants sued individually and in
their official capacities,

                       Defendants.

-----------------------------------------   X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ NOV 13 2009 ★
BROOKLYN OFFICE

**COMPLAINT**

**09 4995**

ECF Case

Jury Trial Demanded

ROSS, J.

AZRACK, M.J.

**PRELIMINARY STATEMENT**

1.    This is a civil rights action in which plaintiff seeks relief for the violation of plaintiff's rights secured by 42 U.S.C. §§ 1983, 1985(3), and 1988; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The claims arise from an incident(s), which occurred on or about November 22, 2006 and December 1, 2006 continuing until September 19, 2008. During the incident(s) the City of New York, and members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, false arrest and imprisonment, unlawful search and seizure, malicious prosecution, denial of medical treatment, conspiracy, harassment, abuse of process, gross negligence, intentional and negligent infliction of emotional distress, unconstitutional conditions of confinement, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful

municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1988; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper here pursuant to 28 U.S.C. § 1391 because the acts in question occurred in Kings County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

4. Plaintiff Lindsay Breeden is an African-American resident of the State of New York, Richmond County.

5. Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

6. Defendant Commissioner Raymond W. Kelly is the Commissioner of the NYPD who violated plaintiff's rights as described herein.

7. Defendant P.O. Louis Ducceschi is a New York City Police Officer, assigned shield # 3030, employed by the NYPD at the 67th Precinct located in Brooklyn, New York, who violated plaintiff's rights as described herein.

8. Defendant Detective Michael Braithwaite, is a New York City Police Officer, assigned shield # 347, employed by the NYPD at the 67th Precinct located in Brooklyn, New York, who violated plaintiff's rights as described herein.

9. Defendant Detective Timothy O'Brien is a New York City Police Officer, assigned shield # 2610, employed by the NYPD at the BSHS Command located in Brooklyn, New York, who violated plaintiff's rights as described herein.

10. Defendant Detective Matthew Walker, is a New York City Police Officer, assigned shield # 1701 employed by the NYPD at the 67th Precinct located in Brooklyn, New York, who violated plaintiff's rights as described herein.

11. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

12. The following is a summary set forth for the purpose of demonstrating and providing notice of plaintiff's claims against the defendants. Plaintiff has not set forth each and every fact concerning the incident(s) described below.

13. On November 22, 2006 at approximately 7:30 p.m., in the vicinity of 3407 Church Avenue, Brooklyn, New York, police officers employed by the NYPD and assigned to the 67th Precinct, the 60th Precinct, or the BSHS Command were investigating a shooting that occurred at the above-stated location and resulted in the death of one individual and the injury to two other individuals, including the plaintiff. Police officers investigating this shooting incident, including defendants P.O. Louis Ducceschi, Shield # 3030, Detective Michael Braithwaite, Shield # 347, Detective Timothy O'Brien,

Shield # 2610, and Detective Matthew Walker, Shield # 1701, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

14. On November 22, 2006, shortly after the shooting, plaintiff had been transported to Coney Island Hospital for emergency surgery to treat the bullet wound in his leg. Police officers received word that plaintiff was involved in the shooting incident that they were investigating and they went to the hospital and without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion to believe that plaintiff had committed a crime, unlawfully detained plaintiff at Coney Island Hospital. The police officers interrogated plaintiff about the shooting that had occurred and prevented him from receiving medical treatment to his injured knee. Plaintiff's knee still suffers injury that, upon information and belief was caused from the delay in receiving treatment in a timely fashion.

15. After interrogating plaintiff for approximately 2 hours, plaintiff was finally allowed to undergo surgery on his gunshot wound. Following plaintiff's surgery he was relocated to a private room in the hospital for approximately five days. During the five days that plaintiff was in a private room at the hospital he was under constant surveillance and detention by the defendant police officers.

16. Upon plaintiff's discharge from the Coney Island Hospital, the defendant police officers, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion to believe that plaintiff had committed a crime arrested plaintiff and removed him to the 67th Precinct.

17. At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, plaintiff did not commit a violation of law,

regulation, or administrative code, either in or outside the individual defendant officers' presence.

19. 18.   At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, plaintiff did not commit any criminal act, either in or outside the individual defendant officers' presence.

19.   At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, plaintiff did not act in manner that would give the individual defendant officers cause to stop, question, or arrest plaintiff.

20.   At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, the individual defendants did not observe plaintiff engaged in suspicious, unlawful, or criminal conduct.

21.   At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, the individual defendants were not provided with a credible or an objectively reasonable complaint from a third person, that plaintiff had engaged in suspicious, unlawful or criminal conduct.

22.   Once defendants seized plaintiff upon his discharge from Coney Island Hospital, he was not free to disregard the defendants' questions, walk way or leave the scene.

23.   After being detained at the 67th Precinct, defendants caused plaintiff to be transferred to Brooklyn Central Booking.

24.   While plaintiff was held at Brooklyn Central Booking, he was subjected to depraved, filthy, and inhumane conditions of confinement, including overcrowding.

25. While plaintiff was incarcerated at the 67th Precinct and Central Booking awaiting arraignment defendants, pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed a crime; and based on the these false allegations the Kings County District Attorney's Office initiated a prosecution against plaintiff, under Indictment Number 10640/06.

26. To cover up their misconduct, the defendant police officers intentionally, knowingly and purposely provided false statements and information to cause plaintiff to be prosecuted.

27. The defendant police officers initiated the above-stated malicious prosecution(s) against plaintiff.

28. The defendant police officers lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

29. The defendant police officers acted with malice to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

30. The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff. Indeed, because plaintiff was charged with 2nd Degree Murder, bail was denied in his case.

31. The above-stated malicious prosecution terminated in plaintiff's favor when plaintiff was acquitted following a jury trial and released from custody on September 19, 2008.

32. The aforesaid events are not an isolated incident. Defendant City of New York and Commissioner Raymond W. Kelly were aware (from lawsuits, notices

of claim and complaints filed with the Civilian Complaint Review Board) that many of the NYPD's officers are insufficiently trained on when: a person may request an officer's badge number, that people have the right to record, document and complain about police misconduct without fear of attack by police officers, and when police officers are authorized to use force.

33. Defendants City of New York and Commissioner Raymond W. Kelly are further aware that such improper training has often resulted in a deprivation of civil rights. Despite such notice, City of New York and Commissioner Raymond W. Kelly have failed to take corrective action. This failure caused the officers in the present case to violate the plaintiff's civil rights.

34. Moreover, defendants City of New York and Commissioner Raymond W. Kelly were aware prior to the incident that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers. Despite such notice, City of New York and Commissioner Raymond W. Kelly have retained these officers, and failed to adequately train and supervise them.

35. The individual defendants acted in concert in committing the above-described illegal acts toward plaintiff.

36. As a result of defendants' actions plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## FEDERAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

37. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

38. The conduct of defendant officers, as described herein, amounted to: false arrest and imprisonment, unlawful search and seizure, malicious prosecution, denial of medical treatment, conspiracy, harassment, abuse of process, gross negligence, intentional and negligent infliction of emotional distress, unconstitutional conditions of confinement, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

39. The conduct of the defendant officers, as described herein, violated plaintiff's rights under 42 U.S.C. §§ 1983, 1985(3) and 1988; the First, Fourth, Fifth, Sixth; and New York State law, by committing: false arrest and imprisonment, unlawful search and seizure, malicious prosecution, denial of medical treatment, conspiracy, harassment, abuse of process, gross negligence, intentional and negligent infliction of emotional distress, unconstitutional conditions of confinement, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

40. Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of plaintiff's rights secured by 42 U.S.C. §§

1983, 1985(3), and 1988; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and New York State law.

41. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

42. The plaintiff is also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiff's rights.

### FEDERAL CLAIMS AGAINST DEFENDANT KELLY

43. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

44. Defendant Raymond W. Kelly is liable, in his official capacity, to plaintiff because: (1) he created and allowed to continue a policy or custom under which unconstitutional practices occurred, (2) he was grossly negligent in supervisor subordinates who committed the wrongful acts, and (3) he exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring.

45. Upon information and belief, defendant Kelly was aware from notices of claim, lawsuits, complaints, and the NYPD's own observations, that the officers sued in the present case were unfit to be police officers, and that it was highly likely that they would commit the acts alleged in the present case.

46. Upon information and belief, defendant Kelly was responsible for the supervision, oversight and discipline of all police officers. He was also responsible

for the care, custody and control of all detainees in police custody. As Commissioner, Kelly is provided on a regular basis with reports concerning: abuse of authority by police officers, excessive uses of force by police officers, complaint allegations concerning these same topics, and breaches of NYPD procedures.

47. Nevertheless, defendant Kelly exercised deliberate indifference by failing to take remedial action.

48. The aforesaid conduct by defendant Kelly violated plaintiff's rights under 42 U.S.C. §§ 1983, 1985(3) and 1988; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and New York State law, by failing to retrain the defendant subordinate officers, failing to adequately discipline the defendant subordinate officers, failing to adequately investigate prior complaints against the defendant subordinate officers either at the facilities where the incidents occurred, or at Kelly's Headquarters located in New York, New York, and creating a culture where criminal offense enforcement initiatives of the City of New York are grounded in the unreasonable philosophy that the "ends justifies the means," and acting in manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees.

49. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

50. The aforesaid conduct of defendant Kelly amounted to negligent hiring, training, monitoring and retention of incompetent employees.

## FEDERAL CLAIMS AGAINST THE CITY OF NEW YORK

51. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

52. The City of New York directly caused the constitutional violations suffered by plaintiff.

53. Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from NYPD's own observations, that the officers involved in the present case were unfit to be officers, and that it was highly likely that they would commit the acts alleged in the present case.

54. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The City of New York failed to properly train, retrain, supervise, discipline, monitor, and improperly utilized and retained these officers. Moreover, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can harass, and violate individuals without consequence. Indeed, when individuals file complaints against officers, the City has a practice of failing to substantiate or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

55. The actions and conduct herein described were propelled by the crime offense enforcement initiatives of the City of New York which is grounded in the philosophy that the "ends justifies the means."

56. Such crime offense enforcement initiative propels officers to make arrests where there is no probable cause for such and no basis for the stop and detention

of individuals and, by such, to generate arrest statistics and to otherwise make examples of individuals in the hope that such would depress other crime offenses.

57. The policy and practices have a disproportionate impact on African-Americans who, because of their race, are often times, and for no other reason but the race factor, singled out for stops, detentions, and arrests.

58. The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. §§ 1983, 1985(3), and 1988; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and New York State law.

59. Moreover, the aforesaid conduct by the City of New York amounted to negligent hiring, training, monitoring and retention of incompetent employees.

60. As a direct and proximate result of the City of New York's misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

61. Finally, under state law, the City of New York is responsible for its employees' actions under the doctrine of respondeat superior.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Costs, interest and attorney's fees; and

    d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED: New York, New York
November 13, 2009

MICHAEL P. KUSHNER, ESQ.
*Attorney for Plaintiff*
155 Water Street
The Green Desk Building
Brooklyn, New York 11201
212.202.2634
kushner.michael@gmail.com

By: _____
MICHAEL P. KUSHNER, ESQ.